**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

**JAMIE TUCKER,**

          **Plaintiff,**                **Case No. 2:18-CV-13522**
                                          **Magistrate Judge Norah McCann King**

    **v.**

**ANDREW SAUL,**
**Commissioner of Social Security,**

          **Defendant.**

**OPINION AND ORDER**

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Jamie Tucker for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq.* Plaintiff appeals from the final decision of the Commissioner of Social Security denying Plaintiff's applications.[1] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure and Local Civil Rule 9.1(f). For the reasons that follow, the Court affirms the Commissioner's decision.

**I.**     **PROCEDURAL HISTORY**

Plaintiff filed applications for disability insurance benefits and supplemental security income on May 23, 2014, and July 31, 2014, respectively, alleging that she has been disabled

---

[1] Andrew Saul, the current Commissioner of Social Security, is substituted as Defendant in his official capacity.

since October 15, 2013. R. 222–33. The applications were denied initially and upon

reconsideration, R. 143–48, 150–54, and Plaintiff sought a *de novo* hearing before an

administrative law judge. R. 155–56. Administrative Law Judge Kenneth Ayers ("ALJ") held a

hearing on May 5, 2017, at which Plaintiff, who was represented by counsel, appeared and

testified, as did a vocational expert. R. 70–96. In a decision dated August 7, 2017, the ALJ

concluded that Plaintiff was not disabled within the meaning of the Social Security Act from

October 25, 2013, the alleged disability onset date, through the date of that decision. R. 13–26.

That decision became the final decision of the Commissioner of Social Security when the

Appeals Council declined review on July 5, 2018. R.  2–7. Plaintiff timely filed this appeal

pursuant to 42 U.S.C. § 405(g). ECF No. 1. On June 6, 2019, Plaintiff consented to disposition of

the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the

Federal Rules of Civil Procedure. ECF No. 15.[2]  On March 12, 2020, the case was reassigned to

the undersigned. ECF No. 20. The matter is now ripe for disposition.

## II.    LEGAL STANDARD

### A.    Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the

authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204

F.3d 78, 83 (3d Cir. 2000).  In contrast, the Court reviews the ALJ's factual findings to

determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d

Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence "does not mean a

large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind

---

[2]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *see K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309 , 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).  Substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla.'" *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *see K.K.*, 2018 WL 1509091, at *4.

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see, e.g., Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016).  The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight."  *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted));

*see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter*, 650 F.2d at 482. Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is

> supported by substantial evidence approaches an abdication of the court's duty to
> scrutinize the record as a whole to determine whether the conclusions reached are
> rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can

enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or

without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the

record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or

contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210,

221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a

complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the

record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see*

*A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award

benefits should be made only when the administrative record of the case has been fully

developed and when substantial evidence on the record as a whole indicates that the claimant is

disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation

omitted); *see A.B.*, 166 F. Supp.3d at 518. In assessing whether the record is fully developed to

support an award of benefits, courts take a more liberal approach when the claimant has already

faced long processing delays. *See, e.g., Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000). An

award is "especially appropriate when "further administrative proceedings would simply prolong

[Plaintiff's] waiting and delay his ultimate receipt of benefits." *Podedworny*, 745 F.2d at 223;

*see Schonewolf*, 972 F. Supp. at 290.

**B.      Sequential Evaluation Process**

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b).  If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c), 416.920(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id*. at §§ 404.1509, 416.909. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. §§ 404.1520(e),

(f), 416.920(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

## III.   ALJ DECISION AND APPELLATE ISSUES

The Plaintiff meets the insured status of the Social Security Act through December 31, 2020. R. 16. At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since October 25, 2013, her alleged disability onset date. *Id.*

At step two, the ALJ found that Plaintiff's multiple sclerosis ("MS") is a severe impairment. *Id.* The ALJ also found that the following diagnosed impairments were not severe: hypertension, obesity, and adjustment disorder with depressed mood. R. 16–17.

At step three, the ALJ found that Plaintiff does not suffer an impairment or combination of impairments that meets or medically equals the severity of any Listing. R. 17.

At step four, the ALJ found that Plaintiff has the RFC to perform sedentary work subject to various additional limitations. R. 17–21. The ALJ also found that this RFC permits the performance of Plaintiff's past relevant work as an insurance clerk. R. 21. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from October 25, 2013, her alleged disability onset date, through the date of the decision. *Id.*

Plaintiff challenges the ALJ's refusal to admit into the record a letter from Plaintiff's treating neurologist; Plaintiff also disagrees with the ALJ's findings at steps three and four and asks that the decision of the Commissioner be reversed and remanded with directions for the granting of benefits or, alternatively, for further proceedings. *Plaintiff's Brief,* ECF No. 17; *Plaintiff's Reply*, ECF No. 19. The Commissioner takes the position that his decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1,* ECF No. 18.

## IV.    DISCUSSION

### A.    Letter From Mary Ann Picone, M.D., Plaintiff's Treating Neurologist

Plaintiff first argues that the ALJ erred when he excluded an opinion letter from Mary Ann Picone, M.D., Plaintiff's treating neurologist, dated April 27, 2017 ("the letter" or "Dr. Picone's letter"), because Plaintiff submitted the letter to the ALJ fewer than five business days before the scheduled administrative hearing. *Plaintiff's Brief*, ECF No. 17, pp. 13–17; *Plaintiff's Reply*, ECF No. 19, pp. 1–5. Plaintiff also argues that the ALJ's decision to exclude the letter is not harmless. *Id*. Plaintiff's arguments are not well taken.

Under the applicable regulations, a claimant must submit any information or evidence to the ALJ no fewer than five business days before the scheduled administrative hearing ("the five-day rule"):

> When you submit your request for hearing, you should also submit information or evidence as required by § 404.1512 or any summary of the evidence to the administrative law judge. Each party must make every effort to ensure that the administrative law judge receives all of the evidence and must inform us about or submit any written evidence, as required in § 404.1512, no later than 5 business days before the date of the scheduled hearing. If you do not comply with this

requirement, the administrative law judge may decline to consider or obtain the evidence, unless the circumstances described in paragraph (b) of this section apply.

20 C.F.R. § 404.935(a). *See also* 20 C.F.R. § 416.1435(a). If a claimant misses this submission deadline, the ALJ will accept the information or evidence under certain limited circumstances:

If you have evidence required under § 404.1512 but you have missed the deadline described in paragraph (a) of this section, the administrative law judge will accept the evidence if he or she has not yet issued a decision and you did not inform us about or submit the evidence before the deadline because:

(1) Our action misled you;

(2) You had a physical, mental, educational, or linguistic limitation(s) that prevented you from informing us about or submitting the evidence earlier; or

(3) Some other unusual, unexpected, or unavoidable circumstance beyond your control prevented you from informing us about or submitting the evidence earlier. . . .

20 C.F.R. § 404.935(b*). See also* 20 C.F.R. § 416.1435(b).

Here, the Social Security Administration ("SSA") sent Plaintiff a letter dated February 13, 2017, advising that an administrative hearing was scheduled for May 5, 2017. R. 179, 185. On March 24, 2017, the SSA sent Plaintiff another letter advising of a change in regulations and advising, further, that "[y]ou must send us or let us know about all evidence at least 5 business days before your hearing." R. 208−09. On May 3, 2017, two days before the scheduled administrative hearing, Plaintiff submitted Dr. Picone's April 27, 2017, letter. R. 27, 73.[3] Plaintiff does not argue, and the record does not reflect, that she notified the ALJ at least five days in advance that she intended to submit Dr. Picone's letter. Instead, Plaintiff's former counsel, Attorney Robert Wertalik,[4] who represented Plaintiff during the administrative

---

[3] The Court addresses the contents of Dr. Picone's letter later in this section.
[4] The hearing transcript mistakenly spells Attorney Wertalik's name "Waterly." *Compare* R. 70 *with*, *e.g.*, R. 13 (ALJ acknowledging Attorney Wertalik as counsel).

proceedings, appeared at the hearing on May 5, 2017, and discussed Dr. Picone's letter with the

ALJ as follows:

> ATTY: No, I don't, I just want to insure that you got Dr. Piccone's [sic] report, which was submitted electronically.
>
> ALJ: Okay. Let me just double check.
>
> ATTY: That will be one of your last exhibits.
>
> ALJ: Piccone [sic] is in at 6F.
>
> ATTY: Okay.
>
> ALJ: And then it looks like there was some other stuff put in on May 3 and let's see what that is. Holy Name Physician Network, that's just a letter signed by Piccone [sic], that was put in on May 3, and then we also have some documents from Northern Eye Institute.
>
> ATTY: Right.
>
> ALJ: Those were put in on May 4.[5]

R. 73.

> ATTY: Dr. Piccone [sic], Judge, is the MS [multiple sclerosis] expert who has been treating her for a long time now.
>
> ALJ: Okay.
>
> ATTY: So, her report is very significant.
>
> ALJ: And this from Northern New Jersey Eye Institute, this is - -
>
> ATTY: Constantine.
>
> ALJ: What doctor, I'm sorry?
>
> ATTY: I believe Constantine, yeah, I just don't see a name on it, that's why I was – it's just like a pre-printed series of forms with handwritten notes. But -- and when was -- when did you obtain this?

---

[5] Plaintiff does not contest the exclusion of documents from the Northern Eye Institute. *Plaintiff's Brief*, ECF no. 17, p. 14 n.5.

ATTY: Which one, Judge?

ALJ: The -- the eye report?

ATTY: That's a good question, I honestly can't answer.

ALJ: Because the question now, with our new rules is that so this was submitted on May 4, right? Which is less than five business days before the date of the hearing, actually it was yesterday.

ATTY: I'd like to make an application for relief of the rule.

ALJ: So, the way it works is you either have to submit it five business days before the hearing or you have to send me a letter saying that it's coming and it may not be here five business days before the hearing. And so, I'll consider whether to admit it this time, but in the future –

R. 74.

ATTY: Oh, sure.

ALJ: -- you have to -- even if it doesn't physically come in, you still have to send me a letter five business days before saying I'm waiting on it, it's probably not going to be here, it may be here, it may not be here because then that covers you.

ATTY: What does that do for you then?

ALJ: It does nothing for me, but what it does is it gets you around the rule.

ATTY: Right.

ALJ: That it has to be submitted five business days before the hearing.

ATTY: I guess it gives the Court the option to postpone the hearing if they wish to.

ALJ: I suppose, yeah. It lets me know of documents that could be coming in so that when they do come in later, then it's basically the -- one of the exceptions that they wrote into the regulations.

ATTY: Right.

ALJ: So, it's I don't know why they wrote it that way, that's just the way they wrote it.

ATTY: I'll ask you off the record, if you like the rule.

ALJ: So -- so, we have those two and I'll consider whether to put those into evidence as well.

ATTY: Should I write a letter and send it to you today, just –

R. 75.

ALJ: If you want to, that's fine, yeah.

ATTY: Yeah, maybe just as a protective measure, just fix.

ALJ: Right, okay.

ATTY: Okay. Thank you.

ALJ: So, we have 1A through BA; 1B through 14B; 1D through 12D; 1E through 15E, and right now we have 1F through 6F in there and the other two documents that I was talking about were submitted on May 3 and May 4.

(Exhibits 1A through 6F, previously identified, were received into evidence and made a part of the record.)

ALJ: The one from NJ Eye Institute and another one is just an additional letter from Dr. Piccone [sic]. Since we have the Piccone [sic] documents in the file already under 6F, I'll, you know, I don't see a reason not to admit the Piccone [sic] letter. The issue is the other one, the eye stuff. The eye –

ATTY: That's more tangential, but the eye problems, as I'm sure the Court's aware of with MS are very consistent with the usual symptomatology so –

ALJ: Okay. Are there any additional documents that you're waiting on?

ATTY: None that I'm aware of.

ALJ: All right.

ATTY: And I didn't send any letters concerning them.

R. 76.

In the administrative decision, the ALJ excluded Dr. Picone's letter on the basis that the submission of the letter violated the five-day rule and "[t]here was no prior correspondence from

12

counsel that [the records, including the letter] were expected, ordered and received late, nor any explanation from counsel as to good cause for late filing." R. 13–14.

Plaintiff argues that the ALJ misled her and Attorney Wertalik when the ALJ agreed at the hearing to accept Dr. Picone's letter into evidence but then ultimately excluded the letter. *Plaintiff's Brief*, ECF No. 17, p. 16 (explaining that the ALJ's "actions during the hearing mislead Ms. Tucker and her counsel into believing the matter was resolved and Dr. Picone's letter was admitted into evidence") (citing, *inter alia*, 20 C.F.R. § 404.935(b)(1)); *Plaintiff's Reply*, ECF No. 19, p. 1 (arguing that the ALJ's representations at the hearing "lulled counsel into the belief that there was no need to submit a statement or make a showing pursuant to one of the rule's exceptions in order to have the evidence from Dr. Picone admitted").

Defendant observes that Attorney Wertalik appeared at the hearing, admitted that he had not timely submitted evidence in accordance with the five-day rule, conceded that the ALJ could have postponed the hearing had counsel done so, agreed to send a letter to the ALJ, but never did so. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 18, p. 11–12 (citing R. 74–76). Defendant characterizes as "logically unsound" Plaintiff's argument that her failure in this regard should be excused pursuant to 20 C.F.R. §§ 404.935(b)(1), 416.1435(b)(1), arguing that regulation excuses only a failure to comply with the five-day rule established in §§ 404.935(a), 416.1435(a), not – as here – the failure to request an exception to the rule under §§ 404.935(b)(1), 416.1435(b)(1). *Defendant's Brief Pursuant to Local Civil Rule 9.1,* at 12 (arguing that the ALJ's actions at the hearing "could not have possibly caused Plaintiff 'to inform us about or submit any written evidence, as required in § 404.1512, no later than 5 business days before the date of the scheduled hearing.'") (quoting 20 C.F.R. § 404.935(a)) (emphasis added by Defendant). In any event, Defendant argues, Plaintiff has failed to even

suggest good cause for her late submission, and has thereby waived the argument in this regard. *Id*. at 12–13.

In reply, Plaintiff insists that the ALJ had agreed to accept Dr. Picone's letter and that any discussion of a letter requesting an exception to the five-day rule related only to the records from the Northern Eye Institute. *Plaintiff's Reply*, ECF No. 19, pp. 2–3. Plaintiff therefore argues that the ALJ erred by excluding Dr. Picone's letter. *Id*. at 3.

Plaintiff's arguments are not well taken. As detailed above, an ALJ will accept evidence submitted after the deadline established by the five-day rule if the ALJ has not yet issued the decision and if, *inter alia*, the SSA's actions misled the claimant. 20 C.F.R. §§ 404.935(b)(1); 416.1435(b)(1). Stated differently, the ALJ will accept late evidence if the claimant missed the deadline because of the SSA's misleading actions. *See id*. Here, Plaintiff identifies no action on the part of SSA that caused her to miss the deadline for submitting evidence. *See generally Plaintiff's Brief*, ECF No. 17; *Plaintiff's Reply*, ECF No. 19. The ALJ's statements at the hearing simply do not satisfy the exception to the five-day rule invoked by Plaintiff. *See* 20 C.F.R. §§ 404.935(a), (b)(1); 416.1435(b)(1). Moreover, as Defendant has observed, Plaintiff has never offered good cause for her failure to satisfy the requirements of the five-day rule. *See Plaintiff's Brief*, ECF No. 17, pp. 14–16; *Plaintiff's Reply*, ECF No. 19, pp. 2–3.

In any event, even if the ALJ erred in excluding Dr. Picone's letter, any such error was harmless. Dr. Picone's two-paragraph letter dated April 27, 2017, states as follows:

> Jamie Tucker has Multiple Sclerosis and she is a patient of mine. She was diagnosed in 1993 and has been a patient at the Multiple Sclerosis Center at Holy Name Medical Center since the late 1990s. She is receiving treatment for Multiple Sclerosis, which is a chronic, progressive disease of the Central Nervous System. Her last office visit was 3/8/17. She is currently taking Copaxone 40mg subcutaneous three times per week. She also takes Baclofen four times per day for stiffness and some other vitamin supplementation. Her last brain MRI study was completed 3/20/17, which shows abnormal findings consistent with Multiple

14

Sclerosis. She has chronic symptoms which include; fatigue, insomnia, balance issues, dizziness, weakness in left side, with spasms to extremities at times. She uses a cane when out of the house walking distances greater than 25 feet. She reports some worsening of her vision and chronic blurred vision with floaters in her left eye. She recently saw her ophthalmologist regarding those ongoing issues.

She is struggling at this time financially and is working part-time 4 hours per day Monday to Friday. She has Multiple Sclerosis, which is a chronic, progressive disease which will ultimately worsen her physical mobility over time. She is disabled as a consequence of her Multiple Sclerosis, she continues to take Copaxone to slow down the disease progression and she is compliant with medications to help maintain her quality of life. She should be considered appropriate for Social Security Disability due to her worsening of her condition.

R. 27.

The information contained in Dr. Picone's letter, *i.e.*, Plaintiff's diagnosis, her treatment history and medication, the results of the MRI of the brain taken on March 20, 2017, Plaintiff's need for a cane, and her symptoms, is already included in the record and was expressly considered by the ALJ. *See*, *e.g.*, R. 18−21 (ALJ's recitation of medical evidence and alleged symptoms, including, *inter alia*, Dr. Picone's treatment note from March 8, 2017, reflecting that Plaintiff had been doing well on Copaxone, and brain MRI taken on March 20, 2017), 405−09 (examination records from April 21, 2014, visit with Dr. Picone, reflecting, *inter alia*, alleged symptoms, medication history, need for a cane, and MS diagnosis), 426−28 (examination records of Kim Arrington, Psy.D., on September 25, 2014, reflecting, *inter alia*, Plaintiff's alleged symptoms and alleged use of a cane), 429−31 (examination records of Rahel Eyassu, M.D., from October 31, 2014, reflecting, *inter alia*, MS diagnosis, Plaintiff's alleged symptoms, medication history, work history, and alleged use of a cane), 436 (copy of brain MRI dated March 20, 2017, indicating MS), 437−40 (treatment records from Dr. Picone dated March 8, 2017, reflecting, *inter alia*, Plaintiff's medication history, alleged symptoms, and MS diagnosis). The employment information contained in Dr. Picone's second paragraph was also

expressly considered by the ALJ. R. 16, 18.

Dr. Picone described Plaintiff's MS as "a progressive disease which will ultimately worsen her physical mobility over time." R. 27. Yet, as previously noted, the ALJ specifically considered Plaintiff's MS diagnosis and found the condition to be a severe impairment at step two. R. 16. Moreover, "[a] diagnosis alone . . . does not demonstrate disability." *Foley v. Comm'r of Soc. Sec.*, 349 F. App'x 805, 808 (3d Cir. 2009) (citing *Petition of Sullivan*, 904 F.2d 826, 845 (3d Cir. 1990)); *cf. Phillips v. Barnhart*, 91 F. App'x 775, 780 (3d Cir. 2004) ("[The claimant's] argument incorrectly focuses on the diagnosis of an impairment rather than the functional limitations that result from that impairment. A diagnosis of impairment, by itself, does not establish entitlement to benefits under the Act"). Similarly, Plaintiff has not explained how a worsening of symptoms at some point in the unknown future can establish a finding of disability during the relevant period. *See generally Plaintiff's Brief*, ECF No. 17; *Plaintiff's Reply*, ECF No. 19.

Dr. Picone's letter also characterizes Plaintiff as "disabled as a consequence of her Multiple Sclerosis." R. 27. However, "[t]he ultimate legal determination of disability is reserved for the Commissioner." *Pintal v. Comm'r of Soc. Sec.*, 602 F. App'x 84, 87 (3d Cir. 2015) (citations omitted); *see also* 20 C.F.R. §§ 404.1527(d), 416.927(d) (providing that statements that are reserved to the Commissioner include a statement that a claimant is disabled and that the ALJ "will not give any special significance to the source of an opinion on issues reserved to the Commissioner"); *Louis v. Comm'r Soc. Sec.*, 808 F. App'x 114, 118 (3d Cir. 2020) ("Whether or not [the claimant] can perform occupational duties is a legal determination reserved for the Commissioner."); *Zonak v. Comm'r of Soc. Sec.*, 290 F. App'x 493, 497 (3d Cir. 2008) ("[T]he ALJ was not obligated to give significant weight to Dr. Kumar's opinion as to Zonak's ability to

work because the opinion related to the ultimate issue of disability—an issue reserved

exclusively to the Commissioner.").

Plaintiff insists that simply because the issue of disability is reserved to the

Commissioner "does not mean the evidence from Dr. Picone, expressing opinions after treating

Ms. Tucker, would have no impact [on] the case or need not be considered by the ALJ[,]"

arguing that the Court of Appeals for the Third Circuit "did not take these [treating physician]

opinions lightly merely because the issue of disability is reserved to the Commissioner."

*Plaintiff's Reply*, ECF No. 19, pp. 3–4 (citing, *inter alia*, *Brownawell v Comm'r of Soc. Sec.*, 554

F.3d 352 (3d Cir. 2008)). However, the Third Circuit also explained that "[r]ather than focusing

on the doctor's choice of words [such as "disabled" in the *Brownawell* case], the ALJ was

obligated to examine the substantive evidence on which the physician's conclusion was based."

*Masher v. Astrue*, 354 F. App'x 623, 628 (3d Cir. 2009) (citing *Brownawell*, 554 F.3d at 355–

56).[6] As noted above and as discussed in more detail below, that is precisely what the ALJ in this

case did. He expressly considered Plaintiff's MS diagnosis, medical history, and alleged

symptoms when concluding that Plaintiff was not disabled. Plaintiff therefore has not shown how

a failure to consider Dr. Picone's conclusory statement of disability harmed Plaintiff. *See*

*generally Plaintiff's Brief*, ECF No. 17; *Plaintiff's Reply*, ECF No. 19; *see also See Shinseki v.*

*Sanders*, 556 U.S. 396, 409–10 (2009) ("[T]he burden of showing that an error is harmful

normally falls upon the party attacking the agency's determination. . . . [T]he party seeking

reversal normally must explain why the erroneous ruling caused harm."); *Rutherford v.*

*Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005) (finding that "a remand is not required here because

---

[6] *Brownawell* is also distinguishable from the instant case because, unlike in this action, the ALJ
in *Brownawell* relied "in large part on evidence that does not exist" to support his decision to
discount the treating physician's opinion. *Brownawell*, 554 F.3d at 357.

it would not affect the outcome of the case"). Notably, the Appeals Council explicitly considered Dr. Picone's letter and concluded that "this evidence [the letter along with records from the Northern New Jersey Eye Institute] does not show a reasonable probability that it would change the outcome of the decision." R. 3.

Finally, and for the reasons previously discussed, Dr. Picone's statement that Plaintiff "should be considered appropriate for Social Security Disability due to her worsening of her condition," R. 27, is not entitled to any special weight and, in any event, Plaintiff has not shown how this assertion requires remand. *See generally Plaintiff's Brief*, ECF No. 17, and *Plaintiff's Reply*, ECF No. 19; *see also* 20 C.F.R. §§ 404.1527(d), 416.927(d); *Garrett v. Astrue*, No. CIV.A. 11-143J, 2012 WL 4446467, at *4 (W.D. Pa. Sept. 25, 2012) (finding that "an opinion on whether plaintiff is entitled to benefits is an issue reserved to the Commissioner").

In short, the ALJ did not err in excluding Dr. Picone's April 27, 2017, letter and, even if he did err in that regard, any such error was harmless and does not require remand.

## B.     Step Three

Plaintiff argues that the ALJ erred at step three of the sequential evaluation when he concluded that Plaintiff's impairments neither meet nor equal Listing 11.09, which addresses MS. *Plaintiff's Brief*, ECF No. 17, pp. 18–25. Plaintiff specifically contends that the ALJ erred in failing to provide any specific reasons for his finding in this regard and erred in concluding that Plaintiff did not meet or equal Listing 11.09B. *Id*. This Court disagrees.

At step three, an ALJ considers whether the combination of the claimant's medically determinable impairments meets or equals the severity of one of the impairments in the Listing of Impairments. 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). An impairment meets a listed impairment if it satisfies "'*all* of the specified medical criteria. An impairment

that manifests only some of those criteria, no matter how severely, does not qualify.'" *Jones,* 364 F.3d at 504 (quoting *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)) (emphasis in original). Moreover, "[a] claimant cannot qualify for benefits under the 'equivalence' step by showing that the *overall* functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment." *Zebley*, at 531 (emphasis added). "[T]he medical criteria defining the listed impairments [are set] at a higher level of severity than the statutory standard" because the "listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing *any* gainful activity, not just 'substantial gainful activity.'" *Id.* at 532 (emphasis in original) (quoting 20 C.F.R. § 416.925(a)).

At the time of the ALJ's decision, *i.e.*, August 7, 2017, Listing 11.09B provided as follows:

> B. Marked limitation (see 11.00G2) in physical functioning (see 11.00G3a), and in one of the following:
>
> 1. Understanding, remembering, or applying information (see 11.00G3b(i)); or
> 2. Interacting with others (see 11.00G3b(ii)); or
> 3. Concentrating, persisting, or maintaining pace (see 11.00G3b(iii)); or
> 4. Adapting or managing oneself (see 11.00G3b(iv)).

20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 11.09B (2017). The regulations explain "marked" limitations in physical functioning as follows:

> 2. Marked Limitation. To satisfy the requirements of the functional criteria, your neurological disorder must result in a marked limitation in physical functioning and a marked limitation in one of the four areas of mental functioning (see 11.00G3). Although we do not require the use of such a scale, "marked" would be the fourth point on a five-point scale consisting of no limitation, mild limitation, moderate limitation, marked limitation, and extreme limitation. We consider the nature and overall degree of interference with your functioning. The term "marked" does not require that you must be confined to bed, hospitalized, or in a nursing home.

a. Marked limitation and physical functioning. For this criterion, a marked limitation means that, due to the signs and symptoms of your neurological disorder, you are seriously limited in the ability to independently initiate, sustain, and complete work-related physical activities (see 11.00G3). You may have a marked limitation in your physical functioning when your neurological disease process causes persistent or intermittent symptoms that affect your abilities to independently initiate, sustain, and complete work-related activities, such as standing, balancing, walking, using both upper extremities for fine and gross movements, or results in limitations in using one upper and one lower extremity. The persistent and intermittent symptoms must result in a serious limitation in your ability to do a task or activity on a sustained basis. We do not define "marked" by a specific number of different physical activities or tasks that demonstrate your ability, but by the overall effects of your neurological symptoms on your ability to perform such physical activities on a consistent and sustained basis. You need not be totally precluded from performing a function or activity to have a marked limitation, as long as the degree of limitation seriously limits your ability to independently initiate, sustain, and complete work-related physical activities.

*Id*. at § 11.00G2a.

a. Physical functioning. Examples of this criterion include specific motor abilities, such as independently initiating, sustaining, and completing the following activities: Standing up from a seated position, balancing while standing or walking, or using both your upper extremities for fine and gross movements (see 11.00D). Physical functioning may also include functions of the body that support motor abilities, such as the abilities to see, breathe, and swallow (see 11.00E and 11.00F). Examples of when your limitation in seeing, breathing, or swallowing may, on its own, rise to a "marked" limitation include: Prolonged and uncorrectable double vision causing difficulty with balance; prolonged difficulty breathing requiring the use of a prescribed assistive breathing device, such as a portable continuous positive airway pressure machine; or repeated instances, occurring at least weekly, of aspiration without causing aspiration pneumonia. Alternatively, you may have a combination of limitations due to your neurological disorder that together rise to a "marked" limitation in physical functioning. We may also find that you have a "marked" limitation in this area if, for example, your symptoms, such as pain or fatigue (see 11.00T), as documented in your medical record, and caused by your neurological disorder or its treatment, seriously limit your ability to independently initiate, sustain, and complete these work-related motor functions, or the other physical functions or physiological processes that support those motor functions. We may also find you seriously limited in an area if, while you retain some ability to perform the function, you are unable to do so consistently and on a sustained basis. The limitation in your physical functioning must last or be expected to last at least 12 months. These examples illustrate the nature of physical functioning. We do not require documentation of all of the examples.

*Id*. at § 11.00G3a.

The regulations also describe "marked" limitations in mental functioning as follows:

> b. Marked limitation and mental functioning. For this criterion, a marked limitation means that, due to the signs and symptoms of your neurological disorder, you are seriously limited in the ability to function independently, appropriately, effectively, and on a sustained basis in work settings (see 11.03G3). We do not define "marked" by a specific number of mental activities, such as: The number of activities that demonstrate your ability to understand, remember, and apply information; the number of tasks that demonstrate your ability to interact with others; a specific number of tasks that demonstrate you are able to concentrate, persist or maintain pace; or a specific number of tasks that demonstrate you are able to manage yourself. You may have a marked limitation in your mental functioning when several activities or functions are impaired, or even when only one is impaired. You need not be totally precluded from performing an activity to have a marked limitation, as long as the degree of limitation seriously limits your ability to function independently, appropriately, and effectively on a sustained basis, and complete work-related mental activities.

*Id*. at § 11.00G2b.

> b. Mental functioning. . .
>
> (iii) Concentrating, persisting, or maintaining pace. This area of mental functioning refers to the abilities to focus attention on work activities and to stay on-task at a sustained rate. Examples include: Initiating and performing a task that you understand and know how to do; working at an appropriate and consistent pace; completing tasks in a timely manner; ignoring or avoiding distractions while working; changing activities or work settings without being disruptive; working close to or with others without interrupting or distracting them; sustaining an ordinary routine and regular attendance at work; and working a full day without needing more than the allotted number or length of rest periods during the day. These examples illustrate the nature of this area of mental functioning. We do not require documentation of all of the examples. . . .

*Id*. at § 11.00G3b(iii).

Here, the ALJ determined at step two that Plaintiff's MS was a severe impairment. R. 16.

At step three, the ALJ found that Plaintiff's "impairments, singly or in combination, do not meet or equal the regulatory requirements of any listing. Listings 11.09 and 12.04 were specifically considered by the undersigned." R. 17.

Plaintiff criticizes this finding, arguing that the ALJ's statement at step three was too conclusory for meaningful judicial review and that her MS meets or medically equals Listing 11.09B3 (marked limitation in physical functioning and in concentration, persistence, or maintaining pace). *Plaintiff's Brief*, ECF No. 17, pp. 18−25. Although the ALJ articulated only his conclusion at step three, *see* R. 17, his decision, taken as a whole, supports the ALJ's conclusion in this regard. *See Jones*, 364 F.3d at 505. At steps two and four, the ALJ provided a comprehensive review of the medical and record evidence relevant to Listing 11.09B, detailing years of medical records. R. 16−21. At step two, the ALJ explained as follows:

> The claimant's medically determinable mental impairment of depressive disorder does not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and is therefore nonsevere.
>
> In making this finding, the undersigned has considered the four broad areas of mental functioning set out in the disability regulations for evaluating mental disorders and in the Listing of Impairments (20 CFR, Part 404, Subpart P, Appendix l). These four areas of mental functioning are known as the "paragraph B" criteria.
>
> The first functional area is understanding, remembering, or applying information. In this area, the claimant has mild limitation.
>
> The next functional area is interacting with others. In this area, the claimant has no limitation.
>
> The third functional area is concentrating, persisting, or maintaining pace. In this area, the claimant has mild limitation.
>
> The fourth functional area is adapting or managing oneself. In this area, the claimant has no limitation.
>
> Because the claimant's medically determinable mental impairment causes no more than "mild" limitation in any of the functional areas, it is nonsevere (20 CFR 404. l 520a(d)(l) and 416.920a(d)(l)).
>
> The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the

22

broad categories found in paragraph B of the adult mental disorders listings in 12.00 of the Listing of Impairments (SSR 96-8p). Therefore, the following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis.

R. 16–17. At step four, the ALJ considered Plaintiff's work history, including the fact that she had been capable of performing her past relevant work on a sustained basis, that she stopped working at that job because she had been laid off and not due to an inability to perform her work, and that she had been working part time on a sustained basis. R. 18, 19. The ALJ noted that an examination on April 21, 2014, revealed that she was oriented times three with normal attention and concentration, intact cranial nerves II-XII and deep tendon reflexes, slight decrease in sensation in the right arm and right leg, intact bilateral fine motor movement, 4/5 muscle strength in the legs, and normal psychomotor activity. R. 18. An MRI of the brain dated June 3, 2014, showed greater than 30 total T2 hyperintense lesions predominantly within the supratentorial compartment that was compatible with the given diagnosis of MS. R. 19. The ALJ also considered the consultative psychologist's findings that  Plaintiff was oriented times three, had intact attention and concentration, was able to perform simple calculations, that Plaintiff's recent and remote memory skills were mildly impaired, that Plaintiff's general fund of information was appropriate to her experience, and that her insight and judgment were fair. *Id*.[7] Moreover, Plaintiff was able to dress, bathe, and groom herself independently on a daily basis, cook, clean, manage money, travel independently throughout her community, and go to the store when necessary. *Id*. Plaintiff was able to read and, in fact, enjoyed reading, and was able to use a computer. *Id*. According to the consultative psychologist, Plaintiff was able to follow and understand simple directions and instructions; was able to perform simple tasks independently;

---

[7] The Court addresses Plaintiff's challenges to the alleged deficiencies in the ALJ's consideration of the consultative psychological evaluation in the next section of this Opinion and Order.

and was able to maintain attention and concentration. *Id*. She further opined that Plaintiff would have mild difficulty learning new tasks and performing complex tasks due to problems with memory. *Id*. The consultative psychologist also commented that Plaintiff's psychiatric problems might significantly interfere with her ability to function on a daily basis; she recommended consultation with a psychiatrist, and speculated that Plaintiff might benefit from individual psychological therapy to help process lifestyle changes. *Id*.

The ALJ also considered at step four the October 31, 2014, consultative examination by Rahel Eyassu, M.D.. R. 20. Plaintiff reported to Dr. Eyassu that she had been diagnosed with MS in 1994 but had never been hospitalized because of the condition. *Id*. Upon examination, Dr. Eyassu noted that Plaintiff was in no acute distress, was alert, and was oriented times three. *Id*. Plaintiff used a straight cane, which he believed was medically necessary. *Id*. Plaintiff was unable to perform tandem walk, but squatted halfway and her fine and gross motor activity was normal. *Id*. Dr. Eyassu noted full range of motion in the upper and lower extremities, and in the cervical and lumbar spine. *Id*. Plaintiff's reflexes were decreased but her strength was 5/5 with no sensory impairment to pinprick noted. *Id*. Dr. Eyassu opined that Plaintiff was limited in her ability to engage in prolonged walking, stair climbing, and standing. *Id*. A June 10, 2015, MRI of the brain showed stable moderate to severe burden of P2 hyperintense demyelinating plaques. *Id*. There was stable mild to moderate burden of Tl hypointense lesions and no enhancing lesions or accelerated parenchymal volume loss. *Id*.

The ALJ also considered the March 8, 2017, follow up examination by Dr. Picon. R. 20–21. Plaintiff denied anxiety or depression. *Id*. Upon examination, Dr. Picone noted Plaintiff's cranial nerves II through XII, and deep tendon reflexes, and fine motor movement were intact and she had a normal gait. R. 21. Dr. Picone diagnosed MS and advised that Plaintiff continue

with Copaxone. *Id.* A March 20, 2017, MRI of the brain revealed stable moderate to severe burden of T2 hyperintense demyelinating plaques with stable mild to moderate T1 hypointense lesion burden with no enhancing lesion or accelerated parenchymal volume loss. *Id.*

The ALJ also specifically considered the opinions of the reviewing state agency experts, *id.*, who found only a mild restriction in activities of daily living, only mild difficulties maintaining social functioning, concentration, persistence, or pace, and no episodes of decompensation. R. 123 (finding further that additional records indicate that Plaintiff "continues to drive, shop, manage money, has no difficulties getting along with others. She is able to follow directions well and gets along with authority figures. She does light cleaning and prepares simple meals").[8] Notably, no doctor has opined that Plaintiff meets or equals any listing.

This thorough review of the evidence, which makes clear that Plaintiff's impairments did not cause marked limitations in either physical or mental functioning and therefore did not meet Listing 11.09B, permits meaningful review by this Court and reflects substantial evidence supporting the ALJ's decision at step three. *See Jones*, 364 F.3d at 505; *Klangwald v. Comm'r of Soc. Sec.*, 269 F. App'x 202, 204 (3d Cir. 2008) ("After broadly concluding that [the claimant] 'has no impairment, which meets the criteria of any of the listed impairments,' the ALJ followed this conclusion with a searching review of the medical evidence. Under our precedents, this is sufficient."); *cf. Scuderi v. Comm'r of Soc. Sec.*, 302 F. App'x 88, 90 (3d Cir. 2008) ("Thus, an ALJ need not specifically mention any of the listed impairments in order to make a judicially reviewable finding, provided that the ALJ's decision clearly analyzes and evaluates the relevant medical evidence as it relates to the Listing requirements."); *Rivera v. Comm'r of Soc. Sec.*, 164

---

[8] In referring to the state agency reviews, the ALJ's decision apparently contains a typographical error: The ALJ mistakenly referred to Exhibit 4A instead of Exhibit 5A. *See* R. 21.

F. App'x 260, 263 (3d Cir. 2006) (finding ALJ's conclusory statement in step three was harmless where, "in reviewing the voluminous medical evidence available to us, we found abundant evidence supporting the position taken by the ALJ, and comparatively little contradictory evidence").

### C.     Subjective Complaints

Plaintiff also challenges the ALJ's consideration of her subjective complaints, apparently arguing that the ALJ improperly minimized Plaintiff's impairments. *Plaintiff's Brief*, ECF No. 17, pp. 26–31. This Court disagrees.

"Subjective allegations of pain or other symptoms cannot alone establish a disability." *Miller v. Comm'r of Soc. Sec.*, 719 F. App'x 130, 134 (3d Cir. 2017) (citing 20 C.F.R. § 416.929(a)). Instead, objective medical evidence must corroborate a claimant's subjective complaints. *Prokopick v. Comm'r of Soc. Sec.*, 272 F. App'x 196, 199 (3d Cir. 2008) (citing 20 C.F.R. § 404.1529(a)). Specifically, an ALJ must follow a two-step process in evaluating a claimant's subjective complaints. SSR 16-3p, 2016 WL 1119029 (March 16, 2016). First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." *Id*. "Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms is established, [the ALJ] evaluate[s] the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities[.]" *Id*.; *see also Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999) ("[Evaluation of the intensity and persistence of the pain or symptom and the extent to which it affects the ability to work] obviously requires the ALJ to determine the extent to which a claimant is accurately stating the degree of pain or the extent to

which he or she is disabled by it.") (citing 20 C.F.R. § 404.1529(c)). In this evaluation, an ALJ

considers objective medical evidence as well as other evidence relevant to a claimant's

symptoms. 20 C.F.R. §§ 404.1529(c)(3),  416.929(c)(3) (listing the following factors to consider:

daily activities; the location, duration, frequency, and intensity of pain or other symptoms;

precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any

medication you take or have taken to alleviate pain or other symptoms; treatment, other than

medication, currently received or have received for relief of pain or other symptoms; any

measures currently used or have used to relieve pain or other symptoms; and other factors

concerning your functional limitations and restrictions due to pain or other symptoms).

Finally, "[t]he ALJ has wide discretion to weigh the claimant's subjective complaints,

*Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983), and may discount them where they are

unsupported by other relevant objective evidence." *Miller*, 719 F. App'x at 134 (citing 20 C.F.R.

§ 416.929(c)); *see also Izzo v. Comm'r of Soc. Sec.,* 186 F. App'x 280, 286 (3d Cir. 2006) ("[A]

reviewing court typically defers to an ALJ's credibility determination so long as there is a

sufficient basis for the ALJ's decision to discredit a witness.").[9]

Here, the ALJ followed this two-step evaluation process.  After considering the record

evidence, including Plaintiff's hearing testimony, the ALJ concluded that Plaintiff's medically

determinable impairments could reasonably be expected to cause symptoms, but that Plaintiff's

"statements concerning the intensity, persistence and limiting effects of these symptoms are not

entirely consistent with the medical evidence and other evidence in the record for the reasons

---

[9]SSR 16-3p superseded SSR 96-7p on March 26, 2016, and eliminated the use of the term
"credibility."  SSR 16-3p.  However, "while SSR 16-3P clarifies that adjudicators should not
make statements about an individual's truthfulness, the overarching task of assessing whether an
individual's statements are consistent with other record evidence remains the same." *Levyash v.
Colvin*, No. CV 16-2189, 2018 WL 1559769, at *8 (D.N.J. Mar. 30, 2018).

explained in this decision." R. 21. As set forth in more detail above, the ALJ also detailed years

of record evidence, reflecting, *inter alia*, Plaintiff's work history that shows that she had been

capable of performing her past relevant work on a sustained basis, that she stopped working at

that job because she had been laid off and not due to an inability to perform her work, and that

she had been working part time on a sustained basis; results of an examination on April 21, 2014,

revealing normal attention and concentration, intact cranial nerves II-XII and deep tendon

reflexes, slight decrease in sensation in the right arm and right leg, intact bilateral fine motor

movement, 4/5 muscle strength in the legs, and normal psychomotor activity; intact attention and

concentration during an evaluation on September 25, 2014, with only mildly impaired recent and

remote memory skills noted; Plaintiff was able to dress, bathe, and groom herself independently

on a daily basis, cook, clean, manage money, travel independently throughout her community,

and go to the store when necessary; Plaintiff enjoyed reading and was able to use the computer;

no hospitalization for MS despite being diagnosed with the disease in 1994; oriented times three

during an examination on October 31, 2014, which reflected normal fine and gross motor activity

of her hands, full range of motion in the upper and lower extremities, cervical, and lumbar spine,

5/5 strength; stable mild to moderate burden of Tl hypointense lesions and no enhancing lesions

or accelerated parenchymal volume loss reflected in a June 10, 2015, MRI of the brain; Plaintiff

denied anxiety or depression in an examination on March 8, 2017, which also revealed intact

cranial nerves II through XII, and deep tendon reflexes, and fine motor movement and a normal

gait. R. 18–21.

  Plaintiff complains that the ALJ improperly relied on her ability to work part-time

without considering the impact of her severe fatigue on her ability to work. *Plaintiff's Brief*, ECF

No. 17, pp. 27–31. Plaintiff's argument is not well taken. As an initial matter, the ALJ did not err

in considering Plaintiff's ability to work part-time when assessing her subjective complaints. 20

C.F.R. §§ 404.1571, 416.971; *Petravich v. Colvin*, No. CV 14-1602, 2016 WL 1117610, at *3

(W.D. Pa. Mar. 21, 2016) ("Although plaintiff alleges that the ALJ improperly focused on the

part-time work plaintiff performed after her alleged onset date, the ALJ did not err in considering

that part-time work as a factor in assessing plaintiff's credibility as to her allegations of

debilitating limitations."). Moreover, as set forth above, Plaintiff's ability to work part-time on a

sustained basis was but one of many facts that the ALJ considered when assessing Plaintiff's

subjective complaints. R. 18–21. Finally, although Plaintiff points to evidence in the record that

she believes supports her subjective complaints, *Plaintiff's Brief*, ECF No. 17, pp. 27–31, the

Court "will uphold the ALJ's decision even if there is contrary evidence that would justify the

opposite conclusion, as long as the 'substantial evidence' standard is satisfied." *Johnson v.

Comm'r of Soc. Sec.*, 497 F. App'x 199, 201 (3d Cir. 2012) (citing *Simmonds v. Heckler*, 807

F.2d 54, 58 (3d Cir. 1986)); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d

Cir. 2011) ("Courts are not permitted to reweigh the evidence or impose their own factual

determinations [under the substantial evidence standard].").

     Accordingly, this Court concludes that the ALJ has sufficiently explained his reasoning

in assessing Plaintiff's subjective complaints, and that his findings in this regard are supported

by substantial evidence in the record. His evaluation of Plaintiff's subjective complaints is

therefore entitled to this Court's deference. *See* SSR 16-3p; *Miller*, 719 F. App'x at 134; *cf.

Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x. 761, 765 (3d Cir. 2009) ("Credibility

determinations as to a claimant's testimony regarding pain and other subjective complaints are

for the ALJ to make.") (citing *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983)); *Davis

v. Comm'r Soc. Sec.*, 105 F. App'x 319, 322 (3d Cir. 2004) (finding that the ALJ sufficiently

evaluated the plaintiff's testimony where "the ALJ devoted two pages to a discussion of claimant's subjective complaints and cited Claimant's daily activities and objective medical reports"); *Campbell v. Berryhill*, No. CV 17-1714, 2018 WL 3575255, at *11 (E.D. Pa. July 25, 2018) ("'A diagnosis of fibromyalgia does not automatically render a person unable to perform jobs that exist in significant numbers in the national economy.'") (quoting *Edelman v. Astrue*, 2012 WL 1605102, at *4 (E.D. Pa. May 8, 2012)). The ALJ's assessment of Plaintiff's subjective complaints therefore cannot serve as a basis for remand of this action. *Id*.

### D.    Opinion of Kim Arrington, Psy.D., Consultative Examiner

Plaintiff also challenges the ALJ's evaluation of the consultative psychological examination conducted by Kim Arrington, Psy.D. *Plaintiff's Brief*, ECF No. 17, pp. 25−26. Plaintiff's arguments in this regard are not well taken.

As set forth above, Dr. Arrington conducted a consultative psychological evaluation on September 25, 2014, and diagnosed an adjustment disorder with depressed mood. R. 426−28. Dr. Arrington also provided the following medical source statement:

> With regard to the daily functioning of the claimant, she is able to follow and understand simple directions and instructions. She is able to perform simple tasks independently. She is able to maintain attention and concentration. She will have mild difficulty learning new tasks and performing complex tasks due to problems with memory. She would be able to maintain a regular schedule. Any difficulties appear attributable to depression. The results of the present evaluation appear to be consistent with psychiatric problems, which may significantly interfere with the claimant's ability to function on a daily basis.

*Id*. At step two, the ALJ expressly considered Dr. Arrington's diagnosis of adjustment disorder with depressed mood, but concluded that this impairment was not severe and caused no more than minimal limitations in Plaintiff's ability to work:

> The consultative examiner at Exhibit 4F [Dr. Arrington] diagnosed the claimant with adjustment disorder with depressed mood. However, there is no other

diagnosis of any depressive disorder in the record. The claimant has received no treatment for this. DDS also found the mental impairment to be not severe.

The claimant's medically determinable mental impairment of depressive disorder does not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and is therefore nonsevere.

In making this finding, the undersigned has considered the four broad areas of mental functioning set out in the disability regulations for evaluating mental disorders and in the Listing of impairments (20 CFR, Part 404, Subpart P, Appendix l). These four areas of mental functioning are known as the "paragraph B" criteria.

The first functional area is understanding, remembering, or applying information. In this area, the claimant has mild limitation.

The next functional area is interacting with others. In this area, the claimant has no limitation.

The third functional area is concentrating, persisting, or maintaining pace. In this area, the claimant has mild limitation.

The fourth functional area is adapting or managing oneself. In this area, the claimant has no limitation.

Because the claimant's medically determinable mental impairment causes no more than "mild" limitation in any of the functional areas, it is nonsevere (20 CFR 404. 1520a(d)(l) and 416.920a(d)(l)).

The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorders listings in 12.00 of the Listing of Impairments (SSR 96-8p). Therefore, the following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis.

R. 16–17 (citing, *inter alia*, Exhibit 4F, which is Dr. Arrington's evaluation, R. 426–28). At step four, the ALJ explicitly recognized Dr. Arrington's evaluation and detailed the doctor's medical source statement. R. 19. However, the ALJ did not expressly weigh Dr. Arrington's statement at that step. *Id*.

Plaintiff contends that the ALJ erred when he failed to provide reasons for implicitly rejecting limitations identified in Dr. Arrington's medical source statement, and argues that this failure requires remand. *Plaintiff's Brief*, ECF No. 17, pp. 25–26.[10] Although the ALJ did not explicitly explain what weight he gave to Dr. Arrington's medical source statement, he did explain at length at step two why Plaintiff's adjustment disorder with depressed mood was non-severe, including his finding that there was no other diagnosis of depressive disorder, no treatment in the record for this condition, and commenting that the condition, which was diagnosed by only Dr. Arrington, caused no more than minimal limitations in Plaintiff's ability to function. R. 16–17. The ALJ also credited the reviewing state agency experts at step two and gave great weight to them at step four. R. 16, 21. A fair reading of the ALJ's discussion of the record evidence, as well as the ALJ's RFC determination, therefore suggests that, to the extent that Dr. Arrington's conclusions and statement were inconsistent with the state agency experts' opinions and other record evidence, the ALJ accorded greater weight to the opinions of the state agency experts and implicitly rejected those portions of Dr. Arrington's medical source statement that suggested a greater limitation of function. R. 17, 19, 21, 123. This analysis and record evidence provide substantial support for the ALJ's evaluation of Dr. Arrington's assessment.

Moreover, even if the ALJ erred in failing to clarify the exact reasons for his implicit rejection of Dr. Arrington's medical source statement, any such error is harmless.  Plaintiff argues that "properly crediting Dr. Arrington's assessment limiting Ms. Tucker to following and understanding 'simple directions and instructions' and performing only 'simple tasks' limits Ms.

---

[10] To the extent that Plaintiff alleges that the ALJ erred by omitting from the RFC certain limitations from Dr. Arrington's medical source statement, those challenges are addressed later in this decision.

Tucker's ability to perform her past relevant work, as explained below [in a separate argument

section]." *Plaintiff's Brief*, ECF No. 17, p. 26. However, as discussed in the next section

addressing the ALJ's RFC determination, Plaintiff's arguments fail to establish a reversible error

in this regard. *See Shinseki*, 556 U.S. at 409−10; *Rutherford*, 399 F.3d at 553.

Accordingly, the Court concludes that, reading the decision as a whole, the ALJ's

consideration of Dr. Arrington's medical source statement does not require remand.

### E.    Step Four

Plaintiff argues that the ALJ's RFC determination is not supported by substantial

evidence and that the ALJ therefore erred when concluding that she could return to her past

relevant work as an insurance clerk. *Plaintiff's Brief*, ECF No. 17, pp. 31−36; *Plaintiff's Reply*,

ECF No. 19, pp. 3−5. This Court disagrees.

A claimant's RFC is the most that the claimant can do despite the claimant's limitations.

20 C.F.R. §§ 404.1545.(a)(1), 416.945(a)(1). At the administrative hearing stage, an ALJ is

charged with determining the claimant's RFC. 20 C.F.R. §§ 404.1527(e), 404.1546(c),

416.927(e), 416.946(c); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir.

2011) ("The ALJ—not treating or examining physicians or State agency consultants—must

make the ultimate disability and RFC determinations.") (citations omitted). When determining a

claimant's RFC, an ALJ has a duty to consider all the evidence. *Plummer*, 186 F.3d at 429.

However, the ALJ need include only "credibly established" limitations. *Rutherford*, 399 F.3d at

554; *see also Zirnsak v. Colvin*, 777 F.3d 607, 615 (3d Cir. 2014) (stating that the ALJ has

discretion to exclude from the RFC "a limitation [that] is supported by medical evidence, but is

opposed by other evidence in the record" but "[t]his discretion is not unfettered—the ALJ cannot

reject evidence of a limitation for an unsupported reason" and stating that "the ALJ also has the

discretion to include a limitation that is not supported by any medical evidence if the ALJ finds

the impairment otherwise credible").

Here, the ALJ determined that Plaintiff had the RFC to perform sedentary work subject to

various exertional limitations:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to, in an eight hour workday, sit up to six hours, stand/walk up to two hours and lift/carry ten pounds occasionally, and less than ten pounds frequently. The claimant needs an assistive device to ambulate. The claimant is able to push/pull the same amount she can lift/carry. The claimant can occasionally climb ran1ps and stairs occasionally; never climb ladders, ropes, or scaffolds; occasionally balance or stoop; and never kneel, crouch or crawl. The claimant can never work at unprotected heights, and can never be exposed to moving mechanical parts.

R. 17. In making this determination, the ALJ detailed years of record evidence, including, *inter*

*alia*, that Plaintiff had been working part time on a sustained basis; had normal attention and

concentration, intact cranial nerves II-XII and deep tendon reflexes, slight decrease in sensation

in the right arm and right leg, intact bilateral fine motor movement, 4/5 muscle strength in the

legs, and normal psychomotor activity during an examination on April 21, 2014; intact attention

and concentration during an evaluation on September 25, 2014, with only mildly impaired recent

and remote memory skills; Plaintiff was able to dress, bathe, and groom herself independently on

a daily basis, cook, clean, manage money, travel independently throughout her community, and

go to the store when necessary; Plaintiff enjoyed reading and was able to use the computer;

Plaintiff has experienced no hospitalizations for MS despite being diagnosed with the disease in

1994; she was oriented times three during an examination on October 31, 2014, which reflected

normal fine and gross motor activity of her hands, full range of motion in the upper and lower

extremities, and in the cervical, and lumbar spine, 5/5 strength; stable mild to moderate burden of

T1 hypointense lesions and no enhancing lesions or accelerated parenchymal volume loss

reflected in a June 10, 2015, MRI of the brain; Plaintiff denied anxiety or depression in an examination on March 8, 2017, which also revealed intact cranial nerves II through XII, and deep tendon reflexes, and fine motor movement and a normal gait. R. 18−21. This record unquestionably contains substantial evidence to support this RFC determination. *See Zirnsak*, 777 F.3d at 615; *Rutherford*, 399 F.3d at 554; *Plummer*, 186 F.3d at 429.

However, Plaintiff argues that substantial evidence does not support this RFC determination because the ALJ failed to properly evaluate her non-severe depressive disorder at this step. *Plaintiff's Brief*, ECF No. 17, pp. 33−35. This Court disagrees.

As set forth above, at step two, the ALJ specifically considered Plaintiff's adjustment disorder with depressed mood, finding it to be non-severe because the disorder causes no more than minimal limitation in Plaintiff's functional abilities. R. 16−17. At step four, the ALJ expressly stated that in crafting his RFC, he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence[.]" R. 17. As detailed above, the ALJ went on to consider Dr. Arrington's diagnosis of adjustment disorder with depressed mood as well as evidence relevant to that diagnosis, including, *inter alia*, that physicians noted in evaluations that she was cooperative, responsive, oriented times three with normal or intact attention and concentration; she had coherent thought processes that were goal-directed with no evidence of hallucinations, delusions, or paranoia; she could dress, bathe, and groom herself independently on a daily basis, cook, clean, manage money, travel independently throughout her community; her recent and remote memory were mildly impaired; she was able to read and use a computer; and that she denied any anxiety or depression during an examination on March 8, 2017. R. 18−21. The ALJ also specifically considered the opinions of reviewing state agency expert, R. 21, who found only a

mild restriction in activities of daily living, only mild difficulties maintaining social functioning and maintaining concentration, persistence, or pace, and no episodes of decompensation. R. 123 (finding further that additional records indicate that Plaintiff "continues to drive, shop, manage money, has no difficulties getting along with others. She is able to follow directions well and gets along with authority figures. She does light cleaning and prepares simple meals"). Accordingly, and contrary to Plaintiff's argument to the contrary, this comprehensive review of the medical record establishes the ALJ's thorough evaluation of Plaintiff's non-severe adjustment disorder with depressed mood when crafting the RFC.

Plaintiff, however, insists that the ALJ erred by failing to accommodate her mild mental limitations and include in the RFC Dr. Arrington's assessment that she could follow and understand "simple directions and instructions" and perform only "simple tasks" and that she would have difficulty learning new tasks or performing complex tasks. *Plaintiff's Brief*, ECF No. 17, pp. 26, 35–36; *Plaintiff's Reply*, ECF No. 19, pp. 3–5. Plaintiff's argument is not well taken. As previously discussed, the ALJ's thorough review of the medical evidence, including his reliance on the findings of the reviewing state agency expert, provides substantial support for his finding that Plaintiff's mental impairment is not severe and causes no more than mild limitations in her functional abilities. Based on this record–where Plaintiff's non-severe adjustment disorder with depressed mood caused no more than mild limitations in her ability to function–the ALJ did not err in failing to include any mental limitation, including any limitation that may have been identified by Dr. Arrington, in the RFC determination. *See Peterman v. Berryhill*, No. CV 18-13751, 2019 WL 2315016, at *8–10 (D.N.J. May 31, 2019), *appeal dismissed* (Dec. 19, 2019) ("[T]here was ample evidence in the record indicating that Plaintiff's mild mental impairments did not meaningfully impact her ability to function during the relevant period. . . . Thus, the

ALJ's decision to exclude Plaintiff's mild mental impairments from the RFC was supported by substantial evidence, nor did the ALJ err by failing to include Plaintiff's mild mental limitations in her hypothetical question to the VE."); *cf. Benjamin v. Comm'r of Soc. Sec.*, No. 1:17-CV-11719, 2019 WL 351897, at *6–7 (D.N.J. Jan. 29, 2019) ("Although it is true that an ALJ must consider all of a claimant's impairments when assessing her RFC, the non-severe impairments must be established by credible evidence and have demonstrable impact on a claimant's RFC."); *Sanchez v. Colvin*, No. CV 15-5539, 2016 WL 4967764, at *3 n.2 (D.N.J. Sept. 16, 2016) (affirming denial of benefits where the ALJ did not include any mental limitations in the RFC and where, *inter alia*, the "ALJ did undertake a more comprehensive analysis of [the claimant's] mental impairment in the course of determining [the claimant's] RFC" and finding "that the ALJ discharged his responsibility with respect to considering the claimant's non-severe mental impairment") (citing, *inter alia*, Dr. Arrington's opinion). For all these reasons, this Court concludes that substantial evidence supports the ALJ's RFC determination as it relates to Plaintiff's mental impairment.

Finally, Plaintiff argues that the ALJ's finding that Plaintiff could perform her past relevant work as an insurance clerk was not supported by substantial evidence. *Plaintiff's Brief*, ECF No. 17, pp. 31–33. This Court disagrees.

At step four, the ALJ determines whether the claimant can perform past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f); *see also Folger v. Comm'r of Soc. Sec.*, No. CV 16-1487, 2017 WL 399205, at *2 (D.N.J. Jan. 30, 2017) ("The term past relevant work means work performed (either as the claimant actually performed it or as it is generally performed in the national economy) within the last 15 years or 15 years prior to the date that disability must be established.")

Here, relying on testimony from the vocational expert, the ALJ concluded that Plaintiff could perform her past relevant work as an insurance clerk, which requires sedentary exertion, SVP 5. R. 21. The ALJ explained that the articulated RFC permits Plaintiff to perform the physical and mental demands of this work as actually and generally performed. *Id*. In challenging this conclusion, Plaintiff simply recites the standard for considering whether a claimant can perform his or her past relevant work and asserts, without explanation, that the ALJ "erred in not considering the mental demands of her highly skilled past work." *Plaintiff's Brief*, ECF No. 17, p. 31–33. . The Court will not construct Plaintiff's arguments for her and finds no merit in her undeveloped argument in this regard. *Cf. Atkins v. Comm'r Soc. Sec.*, No. 19-2031, 2020 WL 1970531, at *4 (3d Cir. Apr. 24, 2020) ("Lacking any direction from [the claimant] as to the specific [evidence] at issue, we will not scour the record to attempt to discern [the claimant's] position."); *Wright v. Comm'r Soc. Sec.*, 783 F. App'x 243, 245 (3d Cir. 2019) ("We need not address this conclusory, undeveloped accusation.") (citations omitted). In any event, to the extent that Plaintiff's criticism of the ALJ's conclusion that she could perform her past relevant work is that her mild limitations resulting from her non-severe mental impairment were not addressed, *see Plaintiff's Brief*, ECF No. 17, pp. 31–33, this criticism boils down to an attack on the RFC determination itself, which this Court has already rejected for the reasons previously discussed.

In short, the Court concludes that the ALJ's RFC determination enjoys substantial support in the record and that the ALJ did not err in finding that Plaintiff could perform her past relevant work as an insurance clerk.

## V.     CONCLUSION

For these reasons, the Court **AFFIRMS** the Commissioner's decision.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**


Date:  October 23, 2020                    _____*s/Norah McCann King*_____
                                                     NORAH McCANN KING
                                        UNITED STATES MAGISTRATE JUDGE